**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE**

**CIVIL ACTION NO. 06-38-DLB**

**JIMMY MULLINS**                                                                                    **PLAINTIFF**


**vs.**                                    **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

********************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jimmy G. Mullins filed applications for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) payments on October 22, 2003. His applications were denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held via video conference on April 11, 2005.  On August 15, 2005, ALJ Don Paris issued a denial decision, finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for further review by letter dated December 23, 2005.  The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claims.

1

Plaintiff, who was 42 years old at the time of the hearing, completed an eighth grade education and alleges an inability to work beginning on July 18, 2002 due to a back injury, numbness in both legs, and nerves.  At the hearing before the ALJ, Plaintiff also indicated that the pain in his lower back radiates into both of his legs, but the left is worse than the right; the pain is constant and sharp, an eight on a ten-point scale; he can walk approximately a quarter mile, stand for 15-20 minutes, and cannot bend or stoop; and he spends most of his time watching television, sitting in the yard, and watering the grass.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on February 9, 2006.  The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.      Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

2

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 20).  At Steps 2 and 3, the ALJ found that Plaintiff's degenerative disc disease (DDD) of the lumbar spine at several levels constitutes a severe impairment, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 24).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a reduced range of light exertional work.  (Tr. 25).  Specifically, the ALJ found that Plaintiff can lift/carry 20 pounds occasionally, 10 pounds frequently; he should avoid any lifting from the floor level; he requires a sit/stand option with no prolonged standing/walking in excess of 30 minutes without interruption; he can occasionally push/pull, use foot controls with his lower extremities, and climb ramps/stairs; he can never climb ladders/ropes; he can occasionally kneel, stoop, crouch, and twist; he can never crawl; he cannot ride in or on vibratory vehicles for any extended distance or time, and he

3

should avoid concentrated exposure to vibration and use of vibratory tools, and extreme cold.  (Tr. 26).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a surveyor helper.  (Tr. 26).  At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform despite his limitations, including bench assembler and factory packer.  (Tr. 27).  This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ should have recontacted his treating physician, Dr. Harry Lockstadt, to determine whether additional information was readily available, pursuant to 20 C.F.R. § 404.1512(e).  In response, the Commissioner contends that it was not necessary to recontact Dr. Lockstadt because the record contained sufficient evidence for the ALJ to reach a decision regarding Plaintiff's residual functional capacity.  Specifically, the Commissioner points to the opinions of, and assessments provided by, Drs. Schleenbaker, Mukherjee, Baez-Garcia, and Templin.  The Commissioner also argues that the ALJ properly rejected Dr. Lockstadt's opinion because: 1) although he stated in a report dated February 23, 2004 that Plaintiff could perform only a limited range of sedentary work, less than two months earlier he had cleared  Plaintiff to return to his prior work, and 2) all of the other medical opinions of record indicate that Plaintiff could perform a limited range of light work.   For the reasons that follow, the Court concludes that substantial evidence supports the ALJ's RFC determination.

4

Dr. Harry Lockstadt, an orthopedic surgeon, first examined Plaintiff on July 11, 2003. (Tr. 231).  Dr. Lockstadt noted "marked tenderness" at the L4-5 and L5-S1 levels, as well as "marked limitation" in both flexion and extension.  (Tr. 231).  Dr. Lockstadt found no signs of weakness in the left leg, and Plaintiff's reflexes were normal.  (Tr. 231).  Straight leg raising was positive for radiculopathy without nerve root compression.  (Tr. 231).  After reviewing Plaintiff's MRI results, which revealed degenerative discs at the L3-4, L4-5, and L5-S1 levels as well as a small disc bulge at L5-S1 and a minor amount of spinal stenosis, Dr. Lockstadt strongly recommended that Plaintiff pursue an active lifestyle:

> Patient must remain active.  He is not allowed to do a lot of lying in bed.  He has to constantly push himself between sitting, standing and walking.  Rest when he hurts and try to keep moving.  If he stops moving, these disks stiffen up and they just never get better.  If he moves too much he will have more pain.

(Tr. 231).  Dr. Lockstadt also stated that Plaintiff was "an excellent candidate for a series of ... epidural injections."  (Tr. 231).[1]  On December 23, 2003, Dr. Lockstadt completed a "work status" report indicating that Plaintiff could return to the work he performed prior to his injury without restriction.  (Tr. 228).

During an examination on February 2, 2004, Plaintiff alternated between sitting, standing and walking, and appeared to favor his right leg over the left.  (Tr. 223).  Plaintiff had difficulty walking on his heels on the left side, numbness of the left foot, a reduced left ankle jerk, and a barely perceptible wasting of the left calf compared to the right.  (Tr. 223).  Straight leg raising on the left side (in the seated and supine positions) was positive.  (Tr. 223).  At the conclusion of this examination, Dr. Lockstadt completed another "work status"

---

[1]Plaintiff received three injections, and reported no relief.  (Tr. 226, 227, 229).

5

report indicating that Plaintiff could lift and carry a maximum of ten pounds; frequently grasp and perform fine manipulation; occasionally sit and stand; and never bend, squat, climb ladders, push/pull, work above shoulder level, or lift.  (Tr. 225).

An MRI performed on February 23, 2004 revealed anterior endplate spondylosis at the T12-L1 through L2-3 vertebrae; degenerative disc disease, posterior annular disc bulging, noncompressive left foraminal disc protrusion with annular tear at L3-4, and borderline low normal size of the central canal at the L3-4 through L4-5 vertebrae; and disc desiccation, posterior annular disc bulging, central/left paramedian disc protrusion, possible impingement of the left S1 nerve root, facet anthrosis and noncompressive neural foraminal narrowing at the L5-S1 level.  (Tr. 220-221).  Dr. Lockstadt reiterated the restrictions he assigned on February 2, 2004, and stated that he had nothing further to offer Plaintiff short of surgery.  (Tr. 219, 222).

In addition to the treatment notes and functional capacity assessment provided by Dr. Lockstadt, the administrative record in this case was replete with evidence related to Plaintiff's back disorder.  For example, Dr. Yoshihiro Yamamoto examined Plaintiff on March 11, 2003 and observed him walk with an antalgic gait favoring the left leg.  (Tr. 137-138).  Dr. Yamamoto noted some give-away weakness in both legs, as well as slightly diminished deep tendon reflexes in his knees and ankles.  (Tr. 137).  A sensory examination was unremarkable, but straight leg raising proved difficulty to perform.  (Tr .137).  Plaintiff could walk on his heels and toes with some difficulty.  (Tr. 138).  An MRI performed on March 26, 2003 revealed degenerative facet joint changes, central stenosis at the L4-5 and L3-4 levels, with mild foraminal encroachment at L3-4.  (Tr. 133).

6

On June 11, 2003, Dr. Randal Schleenbaker examined Plaintiff in connection with his workers compensation claim.  (Tr. 139-143).  Dr. Schleenbaker noted tenderness in Plaintiff's paraspinal muscles and SI joints.  (Tr. 140).  In addition, straight leg raising resulted in pain, and Plaintiff had a reduced range of motion in the lumbar spine.  (Tr. 140-141).  Dr. Schleenbaker observed give-away weakness in Plaintiff's legs, as well as an antalgic gait favoring the left leg.  (Tr. 141).  Plaintiff could walk heel to toe, but his ability to do so was limited by pain.  (Tr. 141).  Dr. Schleenbaker found that Plaintiff could not lift more than 20 pounds, 10 pounds on an occasional basis; he should avoid repetitive lifting or bending; and should avoid crawling, kneeling, stooping, and twisting.  (Tr. 143).

On December 6, 2003, Dr. S. Mukherjee, a state agency medical consultant, reviewed the record and concluded that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk for a total of 2 hours in an 8-hour workday; must periodically change positions between sitting and standing in order to relieve pain or discomfort; his ability to push and pull was limited in the lower extremities; he could occasionally stoop and crouch; frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds; and must avoid concentrated exposure to extreme cold and vibration.  (Tr .190).

Dr. James Templin examined Plaintiff on December 11, 2003.  (Tr. 211-18).  Dr. Templin observed tenderness in the lower lumbar spine and SI joints, as well as a reduced range of motion.  (Tr. 213).  Plaintiff reported a decreased sensation to pin prick in his legs and pain during straight leg raising.  (Tr. 213).  There was a reduced range of motion in Plaintiff's hips, which produced increased lower back pain.  (Tr. 213).   Based upon his exam, Dr. Templin provided the following assessment of Plaintiff's physical abilities:

> Mr. Mullins is unable to engage in activities requiring prolonged standing, walking, frequent bending, stooping, kneeling, crouching, lifting, carrying, climbing, or riding in or on vibratory vehicles for any extended distance or time.  He should avoid lifting items weighing greater than 20 pounds from waist level or carrying this weight for any extended distance or time.  He should avoid any lifting from floor level.  Also, he should avoid activities requiring repetitive use of foot controls.

(Tr. 214).

On March 16, 2004, Dr. J.A. Baez-Garcia, another state agency medical consultant, reviewed the record and concurred, for the most part, with the assessment of Dr. Mukherjee.  (Tr. 232-237).  On February 23, 2005, Dr. Phillip Tibbs examined Plaintiff at the request of the Commissioner and noted that:

> Examination of the low back reveals a normal lumbar lordosis.  Range of motion is restricted more on flexion than extension.  He complains of tenderness on compression over the lumbar facet joints and the sacroiliac joints.  Straight leg raising test is negative for sciatica to 90 degrees bilaterally.  Patrick's disease is negative for intrinsic hip disease.  All of these maneuvers cause some low back pain.  Knee and ankles reflexes are brisk and symmetrical.  The patient can heel and toe walk with some difficulty.  There is no detected neurologic deficit in the lower extremities.

(Tr. 254).  Dr. Tibbs reviewed an MRI performed on February 10, 2005, which revealed mild degenerative disc disease at several levels, including L3-4, L4-5, and L5-S1.  (Tr. 255).  Dr. Tibbs saw no signs of herniations or significant nerve root or canal compression. (Tr. 255).  Dr. Tibbs believed that Plaintiff's symptoms did not result from radicular pain caused by nerve root compression.  (Tr. 255).

Plaintiff relies on 20 C.F.R. § 404.1512(e) in support of her argument that the ALJ should have recontacted Dr. Lockstadt to determine whether additional evidence was readily available.  That section states, in pertinent part:

8

Recontacting medical sources. *When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled*, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. *We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e) (emphasis added).   Therefore, the recontact requirement is triggered only when the record is insufficient to allow the ALJ to make a determination regarding the claimant's disability.   In this case, the record was sufficiently developed to allow the ALJ to make a determination as to Plaintiff's residual functional capacity.   *See supra* pp. 6-8.  Moreover, the ALJ properly looked at the totality of Dr. Lockstadt's treatment notes, as well the medical evidence related to Plaintiff's back impairment.   For these reasons, the Court concludes that Plaintiff's sole argument on appeal is without merit.[2]

### III.  CONCLUSION

---

[2]As a final matter, the Court notes that even if the ALJ erred by failing to contact Dr. Lockstadt for clarification or additional information, any such error was harmless.  When a claimant does not "identify and offer to present any additional evidence from [his] treating physicians showing that [he] was disabled during the relevant period," then the error is harmless.  *Melton v. Comm'r of Social Security*, 178 F.3d 1295, *5 (6th Cir. 1999 ) (Table decision, text available on Westlaw).  Plaintiff did not offer to present any additional evidence from Dr. Lockstadt, therefore, any alleged error was harmless.

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #12) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 18th day of August, 2006.

Signed By:

_David L. Bunning_   DB

**United States District Judge**

10